We are now going to move to appeal 22-2944. This is Laura Mullen v. Ricky Butler. And we're going to begin with oral argument for the appellant. Ms. D'Ambrose will go to you first. May it please the Court. Good morning, Your Honors. My name is Danielle D'Ambrose, and I represent the appellant defendants Rick Butler, Cheryl Butler, and GLB, Inc. The case before this Court involves the review of three district court decisions that are all related to sanctions. First is the district court's flawed analysis and its order sanctioning the defendants and their counsel. Second is the district court's misapplication of controlling law when it punished the defendants with court fines and attorney's fees. And third is the district court's failure to consider several well-supported and viable arguments in their motion to sanction plaintiff and their attorneys. Almost exactly two years ago, this case was before this Court after the plaintiff appealed the district court decision that granted summary judgment, which disposed of the plaintiff's claims. Laura Mullen, the plaintiff in this action, is a mother of two daughters who played in defendants' programs between 2012 and 2017. She alleged in her complaint that the defendants fraudulently concealed claims of sexual abuse that were made against Rick Butler that dated back to the 1980s. These allegations were first made public in 1995 and have been pretty heavily reported on in various public discourse since 1995. Specifically in 2015, it was in ESPN's Outside the Lines as well as several other articles related to either ESPN or other news sources reporting on what ESPN... What difference does that make? What difference does that make? Laura Mullen filed a lawsuit claiming that the defendants... I know she did. And she made these allegations in the lawsuit that were, at least in some part, true. As far as the fraud claims? As far as some of the things that you don't like, the use of the term rape and things like that in the complaint, this happens all the time, every day in civil litigation. It does not amount to Rule 11 sanctions. Well, the Rule 11 sanctions stem from the fact that Laura Mullen filed this case claiming she saw nothing about this online until June of 2017, until after her daughters left the program. She claimed she was duped, that she was defrauded by the defendants. She would have never allowed her daughters to play for the defendants program if she had known about these allegations at all. She claimed that she didn't see anything online until June of 2017, when in reality she was actively discussing these in 2015, 2016 while her daughters were in the program. She repeatedly was signing her daughters up while having full knowledge of what she was claiming was being concealed from her. So the allegations of fraud fail, and they failed from the very beginning. And she knew what she was claiming that was hidden and concealed from her. So this case on summary judgment, that was what the court found. Mullen's case was foreclosed on on summary judgment, and then the class claims were dismissed because there was no representative that could take the place of Mullen. Mullen was the class representative claiming to represent the interests of thousands of individuals. The class notice process, I think, involved notice of about 2,000 people who had children that played for Butler's programs. After class notice went out to 2,000 people, there was not anyone that was identified that could either take Mullen's place or even in discovery. We requested information about who supported her case. Did she have any witnesses? Her attorneys were in the media saying that they were getting calls left and right from people. Yet when asked about it in discovery, no answers were provided. We still have not been told that there was anyone that she knows that can support her case, which is specifically notable because she also spent years in this program. And that sort of raises the issues within the court's rulings for sanctions as well. There was kind of two different court cases going on here. There was the case that was happening in front of the court, and then there was the reality of what it looked like at kind of the ground level here. And we were forced to live in this reality when we were in the court system that it appeared as though these class members were—it's not a normal class action, I guess. I would kind of explain it like that, where we have customers who have some distance between the people who are behind the company that they're suing, the people who defrauded them. Here we have class members who have known about these allegations since they joined the club. Their kids played for the Butlers. They travel with the Butlers. They have practice every day, just about. They go out of town several weekends a year, if not more, with the coaches in the GLB program. And these allegations are a hot topic in the volleyball community. They are very well known. Yet Mullen filed this lawsuit claiming that none of these class members knew anything about these allegations. Does the record reveal any timing between when something might have had to be shown on the Butler website versus when the Mullens signed up? I'm sorry, can you— Sure. So at some point there was some disclaimer that had to be placed in anything that the Butlers put out about the prior circumstances. That's what Mullen was alleging, is that she wanted there to be some disclaimer. Right. Were that juxtaposed time-wise with when the Mullens signed up? So Mullen just alleged in her complaint that her claim was that there was some broad duty for the Butlers to disclose this, but there wasn't. That's just Mullen's claim, that there was a duty to disclose this. There was nothing that required the Butlers to put anything out there. There's a lot of politics and other issues involved with the USAV, like that he was banned for a protective order violation. And it kind of—Mullen and her attorneys and others that were the accusers sort of tried to spin that to make it appear as though it was for other reasons. But there was no—I think that may be what you're referring to, the USAV proceedings and findings, and that was never a requirement for the Butlers to disclose anything. USAV actually—the Butlers weren't even a member of USAV. The program wasn't a member of USAV. So when USAV was claiming to be protecting their athletes, there was no athletes that were playing for sports performance that were members of USAV. There were other, again, issues at play with Rick's involvement in creating a competitor to USAV that impacted, I believe, that decision to ban him based on allegations from the 1980s that were largely adjudicated back in 1995 when the USAV originally did hear these allegations. Question concerning the sanctions against you jurisdictional question. What is your argument that the Notice of Appeal, Documentary 235, included the allegations personally against you? So the Notice of Appeal, it's the appeal of the court orders that specifically sanction plaintiffs—or defendants and their attorney. And specifically when we get to the fee petition, that's where this kind of really comes to fruition, is where originally the court's ruling on the motion for sanctions kind of parsed out the difference between what the defendant's conduct was and what my conduct was. Then we get to the fee petition, and that was—the difference between those two kind of evaporated. Instead, there was a lot of allegations of—or findings that my clients were being held responsible for fees of misconduct that was supposedly done at the assistance of my— it was the defendant's and their counsel was the court's verbiage, and it was used several times throughout. Yet there's no specific findings of any actual coercion of class members, no actual findings of any misstatements that were made or any actual class member that was misled. There was this focus on a potential for coercion that the court said arose purely based on the nature of the relationship of the parties, which, again, that sort of comes back to that. There's two cases going on, and the practical implications of saying that there were class members who could be coerced to opting out of the case because they wanted to stay in the good graces of the defendants can't make sense with the fact that those people, if they want to stay in the case, then must believe that Rick Butler is a danger to the players he coaches and that the program should be shut down. So to be subject to being coerced because you want to be in the Butler's good graces can't live with the same reality of also believing the claims that Mullen was putting forth. And I think importantly is looking at the actual text of the conversations themselves. These aren't wishy-washy class members who were looking for information about the allegations. They made it very clear that they were not having what was being put out in the lawsuit. They said, I want to opt out. I have no interest in this. I resent being dragged into this litigation. I know Laura Mullen is lying. I will provide testimony for you. Those are the responses. Those are the emails that the Butlers were responding to. So I think part of the appeal is that the defendants can't be held responsible for coercing opt-outs that were already decided on when they were being contacted. The communications at issue by the Butlers happened after they were contacted by these class members. And with that, I'm sorry. I would like to close the remainder of my time for rebuttal. Very good. Thank you, Ms. Dambrose. We're now going to move Mr. Chesky to you for argument from the appellee. Good morning. May it please the court. I would submit to the court that there is one case and one reality here. And in that reality, the district court sanctioned the defendants because they willfully interfered with the class notice process by running a misleading and coercive opt-out campaign. Judge Cannelli warned the defendants at the start of this case, before class was even certified, that misleading communications to class members weren't acceptable. That's at docket 73 during a hearing. And by the time class notice went out here, defendants had already made clear by their actions that they had a goal to maximize the number of opt-outs. They asked Judge Cannelli to permit opt-outs by email, which he declined to do, citing some of the problems with communications that had happened earlier in the case. And they also asked for an opt-out form to be included with the notice separately, and Judge Cannelli also declined to do that. So when a Facebook page materialized the same time class notice went out that solicited opt-outs and had an opt-out form on it, we thought it suspicious, and we brought it to the district court's attention. We did not file a sanctions motion at that time. We just filed a notice. We said, this is happening, Your Honor. You should probably know about it. And if at the resulting hearing that Judge Cannelli called, the defendants and their counsel had been honest about what they knew and what they'd been doing, what they'd been saying, I don't think we'd be here. But when Judge Cannelli asked Ms. DeAmbrose what defendants had been saying to class members, she made a material misrepresentation of fact. And then she didn't correct the record. And so that's why it fell on my client and us as class counsel to investigate what happened, prove that the statement hadn't been true, and bring the results back to the district court. If the defendants had been candid about what happened, a pull in all of that time wouldn't have been necessary. It wouldn't have made the communications proper. And in fact, I heard some argument that perhaps the communications weren't improper. They conceded below that the communications that the Butlers and GLV had with class members were not appropriate. That's counsel's words. And so that point's waived on appeal. And so it wouldn't have made the communications more proper, but it would have made an attorney's fee sanction unnecessary. As it stands, the district court's conclusion is reasonable. The communications were both misleading and coercive. I will note that they were not all in response to inquiries. There was a preemptive email sent by GLV, one of their executives to one of the volleyball programs about it. That certainly wasn't in response to specific inquiries. And the district court's conclusion is reasonable, that the notice, that the interference was willful and the sanctions were warranted. Turning to the denial of the defendant's sanctions motion, again, there's no reason to reverse here. The district court recognized that our legal theory wasn't successful. Sometimes we lose cases. That doesn't make it sanctionable. There's a wide gap between a legal theory that's not successful and Rule 11 sanctions. I've heard repeated references to allegations that Ms. Mullins saw nothing at all, and that's not in the complaint. The allegation in the complaint is that she did not know the extent of what had, the extent of the allegations and the truth of them. I think what counsel is referring to is a secondary argument in response to a judicial notice request made in a footnote in a response to a motion to dismiss. I don't think that that amounts to an allegation that my client saw nothing at all. Certainly, that's not what the district court based its decision on. I think the district court explained that very clearly and in probably more detail than it was required to in order to deny a sanctions motion in its written order. Where you've got a district court that's provided a detailed and reasonable explanation of why it has used its discretion not to grant sanctions on appeal, that's really the end of it. Because there's been no error here, we'd respectfully request that the court affirm the district court's order in full except for the portion over which there is not jurisdiction. I can address that if the court would like. Please. I guess I'm slightly confused, but I will try to make sense of it. Originally, in the questions presented, one of the questions was, was the sanction against defendants counsel appropriate? As far as I can tell, that hasn't been appealed. Ms. D'Ambros would have had to put herself in the notice of appeal for there to be jurisdiction, and she simply didn't do that. As far as whether what she was sanctioned for is something that the defendants ended up paying for, I don't think that's quite the case. So the sanctions against Ms. D'Ambros were for making a misrepresentation of the district court and communicating with a representative party. Those are the sanctions against her. I don't think there's any indication that the defendants ended up paying for either of those things. Now, there are some things that Ms. D'Ambros did that defendants ultimately are held responsible for because parties are stuck with what their counsel does. And so things like making a misstatement and not correcting the record, requiring a further investigation, that is conduct that is ultimately on the defendant. But it is not the professional responsibility consequence of making a misrepresentation to the court that they're being sanctioned for. It's what happened because their counsel did that, and they're stuck with what their counsel did. And so I guess to the extent that there is some question as to whether Judge Kennelly's view that this was a misrepresentation is relevant to this, and I don't really even think that's been raised, perhaps that would come into the defendant's appeal. But to the question of, you know, did Ms. D'Ambros fulfill her professional obligations to the court, or was the sanction against her appropriate? I don't think there's jurisdiction for the court to review that. And I'm not saying it's dispositive. The docket entry 235 references four orders by Judge Kennelly. One of them is docket entry 184, a March 13, 2020 memorandum of order with the sanctions against Ms. D'Ambros. It's a CMECF link. I don't know that it's dispositive or not. But I wanted to mention that for the record just in case you had any commentary on it. I think, you know, when you're looking at notices of appeal, it's a little bit more of a holistic analysis, I guess. And I think when you look at that notice of appeal in its entirety, it is clear to me on its face that it is the defendants who are appealing and not Ms. D'Ambros. And that's really the jurisdictional question here is who appealed, not what did they appeal. And so it looks to me here as though the defendants are the ones who appealed, and they did so on time, but that Ms. D'Ambros didn't do so. And a defendant or a party can't appeal on behalf of their lawyer. Unless the court has any other questions, I'm happy to proceed. Thank you very much, Mr. Tiefsky. Thank you. Ms. D'Ambros, we're going to go back to you now for rebuttal argument. Thank you, Your Honors. To be clear, plaintiff first argued that in response to defendant's motion to dismiss, that argued that Mullen's claims of being deceived were not true, that she had referenced an ASPN article in her complaint where she claims that the Butlers concealed these allegations of abuse from the 1980s. She claims she did not see anything, that the class members were all duped, that they had no way of knowing this information because the Butlers had to disclose it. In response to defendant's motion to dismiss, plaintiff argued that judicial notice was improper of that ASPN article that was cited in Mullen's complaint. In quote, was because none of the articles are referenced in the complaint and they are inconsistent with Mullen's claims that she did not see any information online until June of 2017 due to defendant's concealment. That is what she argued and that is what the court relied upon, in part at least, in denying defendant's motion to dismiss. If we had known that Mullen's concealment claim was crucial to getting the class certified in this case as well, that was the uniform act that the court based class certification on. In arguing against class certification, the defendants submitted to the court nearly 700 pages of documents that had class members who were engaged in similar sort of activities, where they rallied around the Butlers in light of the same allegations and the same attacks from the same individuals beginning back to 2015. In 2015, there was this campaign, they called it Spry or Die, and Spry is the shorthand version of sports performance and these class members, in response to the ASPN articles and the attacks on the Butlers, started this social media campaign where they were posting positive testimonials and again rallying around the Butlers in light of these exact same allegations that Mullen claims were concealed from these class members. Then in 2017, the AU was conducting a review of Butler's membership and the class members, again, email campaign they started. They had, again, rallied together, they were all emailing each other behind the scenes, very similarly to what happened in this case. So when the court looked at the defendants and said, well, I can understand why there would be some curiosity or maybe at first view, maybe an assumption that the defendants were somehow involved. However, in light of what was actually presented to the court in the lack of evidence that ended up coming out in the end after discovery on these issues, it's clear that the defendants weren't involved. They were not responsible for the Facebook page. They were not responsible for the email campaign. There's nothing that the plaintiff or that the court has been able to point to to show that the defendants actually had any coercive impact on opt-outs. These class members, again, they were informed. They had already participated in at least two very similar campaigns in recent years, shortly before the class action was filed. So again, while the defendants weren't behind it, the defendants weren't surprised that this sort of act happened and tried to indeed warn the court that certifying the class would raise these sort of issues. And with respect to the sanctions against me, that's not really the focus of this appeal. The appeal is related to the fee petition that was imposed on my clients and the motion for sanctions that was denied. However, it does speak to the motion for sanctions being denied, that the court didn't really address the continued allegations that both the defendants and myself were engaged in misrepresentations for the purpose of soliciting opt-outs or for the purpose of tricking people into opting out of this class action. There's been no actual evidence of that. In addition, the plaintiff— I don't think—I didn't see anywhere where the district judge said that you were tricking people into opting out. Misleading. It was the plaintiff that repeatedly alleged that— That you were coaching them to opt out, not tricking. There was no trickery in these text messages that says, opt out! Well, there was no—I would just argue that there's no coercion in those. The class members had contacted, especially in the text messages and emails, with pretty clear intentions of opting out and pretty clear opinions that they already had about the lawsuit before the butlers even responded. And with respect to the misstatement that I made to the court about the email that went out from Troy. First, that email that went out from Troy was in response, and Troy submitted a declaration that said it was in response to getting calls. He's the boys' program coordinator. The boys' program—he was being approached because people in the boys' program were understandably confused. They didn't think that they were part of the class action. They were getting this notice and thought, this wasn't intended for me. And he had to then have these individual talks with people. So he said that instead of having individual discussions, he would send out a neutral, unbiased, just factual email that said, check your spam folders. This does apply to you. And again, looking at the text of the actual email that he had sent out, there is no misstatements, no coercion. And with that, I see I'm out of time. Thank you. Thank you, Ms. Dambrose. Thank you, Mr. Tiefsky. The case will be taken under advisement.